Michael Joel MORALES, Appellant,

v.

STATE of Texas.

No. 83–00.

Court of Criminal Appeals of Texas.

Dec. 6, 2000.

Gary M. Polland, Houston, for appellant.

Alan Curry, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court, joined by MANSFIELD, KELLER, PRICE, HOLLAND, WOMACK, JOHNSON and KEASLER, JJ.

Appellant was convicted by a jury of the felony offense of driving while intoxicated and sentenced to thirty-five years confinement. The First Court of Appeals reversed and remanded the trial court's judgment in an unpublished opinion. *Morales v. State*, No. 01–99–00457–CR slip op. at 5 (Tex.App.—Houston [1st Dist.] Dec.9, 1999). We granted the State's petition for discretionary review to decide whether the Court of Appeals erred in holding that the trial judge abused his discretion in excluding expert testimony regarding the burn-off rate of alcohol and whether the lower court conducted a meaningful harm analysis under Rule of Appellate Procedure 44.2(b).

### I.

Appellant was charged with the felony offense of driving while intoxicated and tried before a jury. At trial, Officer Neil Joseph Gibbs Depina–Correia, the arresting officer, testified for the State as to appellant's condition when he was stopped and taken into custody.[1] The State also called Officer Jerald Roberts, who had participated in processing appellant at the police station, to give testimony as to appellant's condition and behavior when he arrived at the station.[2]

Appellant called Thomas Cromin, the passenger of the vehicle appellant was driving when stopped and subsequently arrested. Cromin testified that appellant had been drinking earlier in the evening. Cromin also specified how many beers he recalled appellant drinking, as well as the time of day the last beer was consumed.

Appellant then offered expert witness testimony by Ronald Tisdell regarding the rate at which alcohol is absorbed, or "burned off", by the normal processes of the human body. The trial judge excluded the testimony, sustaining the State's objection that it was not relevant because appellant had not taken a breath test. Appellant perfected a bill of exception of Tisdell's proposed testimony outside the presence of the jury.[3]

On appeal, appellant argued Tisdell's testimony regarding the "burn off" of alco-

---

1. Depina Correia was parked on the side of the road, completing an unrelated traffic stop, when he noticed appellant's vehicle driving toward him from behind with two wheels on the road and two wheels on the sidewalk. Appellant swerved back onto the road just before hitting the officer's car. Depina Correia activated his emergency equipment and attempted to stop appellant. Appellant continued driving, ran a red light, and finally pulled his vehicle to a stop on the side of the road. When appellant exited the vehicle, Depina Correia noticed he had trouble walking and could not keep his balance. The officer had appellant perform a horizontal gaze nystagmus (HGN) test and, based on his performance, as well as what the officer had observed, Depina Correia decided that appellant was intoxicated and arrested him.

2. Roberts testified that appellant had trouble walking and seemed to be confused as to what was happening at the police station.

Roberts also testified that appellant refused to take a breath test and refused to perform any field sobriety tests at the station.

3. Tisdell's vitae was admitted in evidence, detailing Tisdell's credentials and professional history. Appellant then presented Tisdell with a hypothetical fact situation concerning consumption of alcohol and the "burn off" of that alcohol. The hypothetical involved a person drinking five or six beers, the last one being at 6:00 p.m., and then being stopped by a police officer at 2:15 a.m., nine hours later. This hypothetical closely matched the details of Cromin's testimony regarding appellant's drinking on the day of the arrest. Appellant questioned Tisdell as to whether this hypothetical person would be suffering any impairment, mental or physical, due to the alcohol, at the time of the 2:15 a.m. stop. Tisdell responded, "No sir. It's my opinion that he would not."

hol was a valid scientific theory tied to a hypothetical that was similar to the facts of the case, and was therefore relevant evidence which should have been presented to the jury. The Court of Appeals agreed, holding that the expert testimony regarding "alcohol burn-off rate was relevant in determining whether appellant was intoxicated at the time he was pulled over." *Morales*, slip op. at 5.

Having found that the expert testimony regarding alcohol burn-off rate was relevant, the lower court then addressed the question of harm in a single sentence: "the failure to permit the expert to testify did affect a substantial right of appellant's— the right to have the jury consider his version of the facts." *Morales*, slip. op. at 5. Supported solely by this statement, the Court of Appeals held the error harmful and reversed appellant's conviction.

## II.

■ The State's first point of error claims "the court of appeals erred in failing to consider the 'fit' requirement for the admissibility of expert testimony."

■ Admission of expert testimony is governed by Texas Rule of Evidence 702.[4] When addressing the admissibility of expert testimony, the trial court's "first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results." *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim.App.1992). Naturally, testimony which is unreliable or irrelevant would not assist a juror in understanding the evi-

dence or determining a fact in issue, as is required by Rule 702.

Texas Rule of Evidence 401 defines relevant evidence as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401. This broad definition lends itself to a liberal policy of admission of evidence for the jury's consideration.

■ When the evidence at issue is expert testimony, the trial court must also determine whether the evidence meets the Rule 702 standard and "assist[s] the trier of fact [in] understand[ing] the evidence or [in] determin[ing] a fact in issue." When examining the Rule 702 issue, the trial court must determine whether the expert "make[s] an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony." *Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim. App.1996). Restated, the testimony must be "sufficiently tied to the facts to meet the simple requirement that it be 'helpful' to the jury." *Id.* This is the "fit" requirement, and the basis of the State's argument.

■ If a trial judge finds the proposed expert testimony meets both the Rule 401 and Rule 702 requirements, then the judge must perform a Rule 403[5] analysis to determine whether the evidence should, in fact, be presented to the jury. *Kelly*, 824 S.W.2d at 573. An appellate court should not disturb the trial court's decision to admit or exclude scientific evidence absent an abuse of discretion. *Hi-*

---

4. The Texas Rules of Criminal Evidence were amended on March 1, 1998, at which time they were combined with the Texas Rules of Civil Evidence to make up the Texas Rules of Evidence. Texas Rule of Criminal Evidence 702 was identical to the current version of Texas Rule of Evidence 702.

Texas Rule of Evidence 702 reads:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by

knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

5. Texas Rule of Evidence 403 reads:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

*nojosa v. State,* 4 S.W.3d 240, 251 (Tex. Crim.App.1999).

The State does not claim that the testimony, in general, was irrelevant under Rule 401, but that, under Rule 702, appellant's expert failed to take into account ***"enough*** of the pertinent facts ... to be of assistance [to] the jurors on the question of whether the appellant had lost the normal use of his mental and physical faculties by the reason of the introduction of alcohol into his body."[6] This argument stems from our statement in *Jordan* that "the question under Rule 702 is ... whether the expert's testimony took into account *enough* of the pertinent facts to be of assistance to the trier of fact on a fact in issue." *Jordan,* 928 S.W.2d at 556. The State maintains that the Court of Appeals failed to perform a *Jordan* analysis and that, had the lower court done so, it would have found that the facts presented by the expert were not sufficient to assist the trier of fact.

■ While the Court of Appeals discussed some of the evidence presented at trial, it did not detail the facts considered and taken into account by Tisdell in giving his testimony. The reviewing court should, under Rule 702, examine the expert's testimony to assess whether the expert made an adequate effort to tie the relevant facts of the case to the scientific principles about which he testified. *See Griffith v. State,* 983 S.W.2d 282 (Tex. Crim.App.1998) (expert witness did "fit" his expert knowledge with the particular facts of the case in his evaluation of appellant's future dangerousness), *cert. denied,* 528 U.S. 826, 120 S.Ct. 77, 145 L.Ed.2d 65 (1999); *Williams v. State,* 895 S.W.2d 363 (Tex.Crim.App.1994) (expert witness did not connect generic testimony concerning

the psychological profile of a particular type of offender to the facts of the case); *Rousseau v. State,* 855 S.W.2d 666 (Tex. Crim.App.1993) (expert's general discussion of unreliability of eyewitness testimony failed to address how those tendencies toward unreliability applied to the facts of the case), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Pierce v. State,* 777 S.W.2d 399 (Tex.Crim.App. 1989) (expert's testimony failed to apply general principles of unreliability in eyewitness testimony to the specific facts of the case), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990).

The Court of Appeals noted one fact that was considered and applied by Tisdell—the passage of time between appellant's last beer and his arrest. *Morales,* slip op. at 4 n. 2 (noting that Tisdell "testified that if appellant had not had any beer within six to seven hours of the arrest, he would not have been impaired ..."). But the court failed to discuss whether this fact alone, as applied to the principles regarding alcohol burn-off, was enough "to be of assistance to the trier of fact" under Rule 702, or whether other facts were and/or should have been considered. The Court of Appeals' analysis of this question under Rule 702 was inadequate.

On the basis of this point of error, the judgment of the Court of Appeals is vacated and this case is remanded to that court for reconsideration consistent with this opinion.

**III.**

■ The State's second point of error argues that "the Court of Appeals erred in reversing appellant's conviction without conducting a meaningful harm analysis under Rule 44.2(b)."[7]

---

6. Although the State argues in its brief that Tisdell's testimony also·fails to meet the *Kelly* requirement of reliability, the State did not make that argument before the Court of Appeals and the Court of Appeals did not address it *sua sponte.*

7. On remand, the Court of Appeals may find that Tisdell's testimony met the "fit" requirement and that there was no Rule 403 prejudice in presenting the testimony to the jury, meaning the exclusion of the testimony was error. In light of this possibility, we will address the State's second point of error. Of

Rule 44.2(b) provides that errors in criminal cases which do not affect substantial rights are to be disregarded on appeal. TEX.R.APP.PROC. 44.2(b). We have previously declared that "[a] substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266 at 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557). We have also stated that "[a] criminal conviction should not be overturned for non-constitutional error [under Rule 44.2(b) ] if the appellate court, after examining the record as whole [sic], has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410 at 417 (Tex.Crim.App.1998).

■ Most recently, we explained that when conducting a harm analysis under Rule 44.2(b), "an appellate court need only determine whether or not the error affected a substantial right of the defendant. To make this determination, appellate courts must decide whether the error had a substantial or injurious effect on the jury verdict. The very process of reaching this decision, is the performance of a Rule 44.2(b) harm analysis." *Llamas v. State*, 12 S.W.3d 469, 471 & n. 2 (Tex.Crim.App. 2000).

■ In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appel-

lant's claim. *See Llamas*, 12 S.W.3d at 471; *cf. Medina v. State*, 7 S.W.3d 633, 645 & n. * (Tex.Crim.App.1999) (Womack, J., concurring) (addressing factors to be considered when performing harm analysis for unobjected to jury charge error), *cert. denied*, — U.S. —, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). When the claimed error is the exclusion of a relevant piece of evidence, as is the case here, conducting a meaningful harm analysis would necessarily require consideration of all evidence which *was* admitted at trial. In short, the lower court should "examin[e] the record as [a] whole" when conducting a harm analysis. *Johnson*, 967 S.W.2d at 417.

■ The fact that a piece of evidence was wrongfully excluded from the jury's consideration is not sufficient to warrant reversal of a conviction unless the exclusion had a "substantial and injurious effect or influence in determining the jury's verdict." *King*, 953 S.W.2d at 271. The Court of Appeals erred in failing to consider whether the exclusion of the expert testimony had such an effect or influence.

We vacate the judgment of the Court of Appeals and remand this cause to that court for reconsideration consistent with this opinion.

McCORMICK, P.J., concurred in the result.

course, if the Court of Appeals concludes, on remand, that exclusion of the testimony was not error, then it need not reconsider the question of harm.