11th
Court of Appeals

                                                               
Eastland, Texas

                                                                        Opinion

 

Tyrone Washington

Appellant

Vs.                   No.
11-02-00102-CR B Appeal from Dallas County

State of Texas

Appellee

 

A jury
convicted appellant of the offense of assault, a Class A misdemeanor.  The trial court set appellant=s punishment at confinement in jail for 365
days and a fine of $500.  The trial
court suspended the imposition of the jail time and placed appellant on
community supervision for 2 years.  We
affirm.

In his
first issue on appeal, appellant claims that the evidence is factually
insufficient to support his conviction. 
We disagree.

While Roy
Wayne Traylor, Sr. was getting a tire replaced at a tire shop, appellant came
in to get a flat repaired.  Enrique
Venegas, who worked at the tire shop, testified that, when appellant arrived,
Traylor said something to appellant. 
Appellant then hit Traylor with a jack stand which appellant had gotten
from his pickup.  Traylor fell, and appellant
continued to attack him.  Venegas
testified that appellant ordered his dogs to attack Traylor.  Traylor was bleeding from the face and had
dog bites on him.  Traylor=s son gave a pipe to Traylor, and Traylor
used the pipe to run the dogs away.  Shortly
thereafter, the police arrived.  








Traylor=s 11-year-old son also testified.  His testimony was much the same as that of
Venegas.  He added that, when appellant
arrived at the tire shop, appellant began to call the name of a dog that his
father had raised, saying, AOtis Boy.  Otis Boy.@ 
Traylor was in the business of raising and training horses and
dogs.  Otis had been killed, and Traylor
thought that appellant was responsible for the death.  Words were exchanged; appellant hit Traylor with the jack stand;
and Traylor fell to the ground. 
Appellant first commanded his dog to watch Traylor and then told the dog
to get Traylor.  The dog started biting Traylor.  Traylor=s son got a pipe and gave it to his father who used it to run off the
dog.  Traylor got the jack stand, but
appellant picked up a brick and hit Traylor in the chin.  According to Traylor=s son, both Traylor and he attempted to call
9-1-1.

Traylor testified that, when appellant arrived at the tire shop,
appellant began to taunt him about his dead dog.  Appellant was saying, AOtis Boy, Otis Boy, Otis Boy.@  Otis was a male pit bull that
Traylor had raised from a pup and had had for about 11 years.  The dog was valuable as a breeding dog.  Appellant began to tell Traylor that he had
videotaped how Otis was killed.  Traylor
told appellant that he would catch appellant in his yard sometime.  Appellant replied that what was going to
happen was that Traylor was going to jail. 
Traylor turned to walk away; and appellant said, AThat ain=t all that=s
going to happen.  Something is going to
happen to you.  Something is going to
happen to you.@  At
this point, appellant got a two-ton jack stand from the back of his pickup, hit
Traylor in the face, and knocked him down. 
Appellant hit Traylor once again. 
As appellant tried to hit him a third time, Traylor grabbed the jack
stand, and both men were holding it. 
Appellant attempted to kick Traylor between the legs and to hit him in
other places.  While appellant was
attempting to hit Traylor, Traylor bit appellant=s thumb.  Appellant told his dog
to attack.  While the dog was attacking
Traylor, appellant continued to kick him. 
Traylor got up and attempted to call the police.  Traylor was able to get the police but not
before appellant hit Traylor in the face with a brick.  While they were waiting on the police,
appellant picked up a car rim, and Ahe had it in his left hand.  And
he took his shirt off, and he was walking and tough-talking me.@  
Traylor flagged down an officer who waited at the scene until the
officers who actually had been dispatched arrived.  Traylor had cuts to his face and collarbone area, and he had dog
bites to his hands, elbow, and leg. 
Traylor was later treated for his injuries at a hospital.

Officer Anthony Leonard investigated the incident.  He testified that, based upon his interviews
with Traylor, appellant, and several witnesses who did not want to get
involved, he determined that appellant was the aggressor.  He further testified that Traylor had one or
two dogs in his pickup and that there was one dog in appellant=s pickup and one had run away.








Appellant testified that he knew that Traylor had been convicted for
two murders in the past.  He stated that
he was also aware that Traylor had assault convictions.  Appellant and Traylor were neighbors, and
Traylor had caused a considerable amount of trouble for appellant.  Traylor would threaten appellant, shoot into
his property, and do various other things that would cause appellant to be
afraid of Traylor, including mutilating pigs. 
According to appellant, on the day of the assault, it was Traylor who
was the aggressor.  Traylor first spit
on appellant=s shoes, then on his shirt, and then hit him
in the right shoulder.  Traylor kept
trying to hit him, as if sparring with him, but missed.   Appellant was trying to protect
himself.  He said that he did not order
his dog to attack Traylor; but, rather, the dog instinctively came to his
defense.  Appellant further testified
that Traylor told his son to go to their pickup and get a dog.  Traylor=s son got the dog, a pit bull; but it would not do anything.  Traylor told his son to put the dog back in
the pickup.  Appellant further testified
that he did not remove his shirt and threaten Traylor with the tire rim.  Instead, Traylor removed appellant=s shirt by pulling on it.  Further, appellant denied having killed
Traylor=s dog. 
Appellant also testified that he had a videotape which showed Traylor=s aggression and also showed Traylor turning
pigs loose in his backyard so that his dogs could mutilate them.  Appellant stated that he was the one who
called the police while he defended himself with a shovel as Traylor continued
to hit him on the head several times.

Appellant called other witnesses who testified to either Traylor=s previous acts of aggression and bad
reputation or to appellant=s good reputation.  

In reviewing appellant=s factual insufficiency point, we are required to determine:

[W]hether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 


 

Johnson
v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000). 


In this case, the jury was the trier of fact and, thus, was the judge
of the credibility of the witnesses and the weight to be given to their
testimony.  TEX. CODE CRIM. PRO. ANN.
arts. 38.04 & 36.13 (Vernon 1979 & 1981) .  The jury may believe some witnesses and refuse to believe
others.  Further, it may accept portions
of the testimony of a witness and reject other portions.  Esquivel v. State, 506 S.W.2d 613, 615
(Tex.Cr.App.1974).  An appellate court
cannot substitute its judgment for that of the fact finder.  Clewis v. State, 922 S.W.2d 126, 133
(Tex.Cr.App.1996).  

After conducting a review in accordance with the above standards, we
hold that the evidence in this case is factually sufficient to support the
verdict of the jury.  Appellant=s first issue on appeal is overruled.








 In his second issue on appeal,
appellant contends that the trial court erred when it refused to allow him to
introduce certain videotapes.  Appellant
had three video cameras installed at various places on his property.  One of these cameras pointed toward Traylor=s property. 
Appellant maintains that the videotapes reflected an earlier incident on
the date that Otis was killed. 
Appellant argued that the videotape shows, among other things, the sound
of gunshots, the yelp of a dog, and Traylor=s reaction to appellant=s dog being shot.  Appellant
also asserts that the videotape shows shouts of profanities, sounds of sirens,
appearance of police officers at the scene, Traylor=s aggressive nature, appellant=s state of mind,  and why appellant was afraid of Traylor.

We have reviewed the videotapes. 
Some portions of the videotapes are unintelligible, both the audio and
video portions.  Nevertheless, even if
we assume that appellant is correct in his assertion that the trial court
should have admitted the videotapes under TEX.R.EVID. 404(a)(2) as evidence of
a pertinent character trait exhibited by Traylor, any error did not affect
appellant=s substantial rights.  TEX.R.APP.P. 44.2(b) provides that an
appellate court is to disregard an error that does not affect substantial
rights.  A substantial right is affected
if there is an error which had a substantial and an injurious effect or influence
upon the jury=s verdict. 
King v. State, 953 S.W.2d 266, 271 (Tex.Cr.App.1997).  Where the alleged error is not a
constitutional one, we will examine the record to determine whether there is a
fair assurance that the jury was not influenced, or only slightly influenced,
by the error.  Morales v. State, 32
S.W.3d 862, 867 (Tex.Cr.App.2000).  As
required by Morales, we have reviewed the record as a whole.  Here, everything allegedly on the videotapes
had been testified to, either by appellant, Traylor, or one of appellant=s witnesses. 
All of the information was before the jury.  Even if there was error committed by the trial court when it did
not admit the videotapes, any error did not affect appellant=s substantial rights.  Appellant=s second issue on appeal is overruled.

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

JUSTICE

October
31, 2002

Do not
publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:
Arnot, C.J., and Wright, J., and McCall, J.