NO. 07-03-0362-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 23, 2008

_____

MICHAEL LEROY CAMERON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 9TH DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 01-09-05992CR; HONORABLE FRED EDWARDS, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION ON SECOND REMAND
FROM COURT OF CRIMINAL APPEALS**

Following a plea of not guilty Appellant, Michael Leroy Cameron, was convicted by a jury of delivery of a controlled substance. Finding the three enhancement allegations in the indictment to be true, the trial court assessed sentence at twenty-five years confinement. By two issues, Appellant asserted: (1) the trial court erred in prohibiting his prior attorney from testifying unless Appellant waived his attorney-client privilege, and (2)

his trial counsel was ineffective. By opinion dated August 16, 2004, this Court overruled Appellant's ineffective assistance of counsel issue. *Cameron v. State*, No. 07-03-0362-CR, 2004 WL 1839794 (Tex.App.–Amarillo Aug. 16, 2004) (not designated for publication). By that same opinion, this Court determined that Appellant failed to preserve error as to his first issue; however, on Appellant's second petition for discretionary review, the Court of Criminal Appeals reversed the decision of this Court, holding that Appellant's contention had been preserved for review. The Court of Criminal Appeals went on to hold that the trial court had abused its discretion in failing to admit testimony from Appellant's former attorney and remanded the case to this Court with instructions to conduct a harm analysis. *Cameron v. State*, 241 S.W.3d 15, 22-23 (Tex.Crim.App. 2007).

## Factual Background

Because the background facts have been previously set out in the prior opinions of this Court and the Court of Criminal Appeals, for purposes of our harm analysis, we restate only those background facts as are necessary to an understanding of our analysis.

Ron Pickering and Philip Cash were working as undercover narcotics officers at the Handle Bar Club in Conroe during the evening hours of April 25, 2001, and the early morning hours of April 26th. During their undercover operation, Pickering made arrangements with Stacy Warden to purchase some cocaine. After making a cell phone call to an unidentified number, Warden indicated to Pickering that "it would be there within 15 minutes." Sometime later, an individual entered the club, made eye-contact with Warden, and then exited the club. Pickering identified that individual as Appellant.

2

According to Pickering's testimony, Warden then followed Appellant to a vehicle in the parking lot of the club. Pickering and Cash exited the club and observed Warden meet with Appellant at the vehicle. Warden then crossed the parking lot, where she delivered a plastic bag containing cocaine to Pickering in exchange for $120.00. Warden then walked back to Appellant and handed him the money. A few moments later, while Pickering was still standing in the parking lot, Warden introduced Appellant to him as "Mike." At that time, Appellant asked Pickering "how he liked the blow," (the street name for powder cocaine) and advised him that "if [he] needed anything more that [he] should contact [Warden]."

No arrests were made at that time. Instead, Pickering described the investigation as a "buy and walk," where their status as undercover agents would not be compromised. Appellant and Warden were identified by subsequent police investigation, the case was referred to the district attorney's office, and the grand jury indicted Appellant for the offense of delivery of a controlled substance on September 25, 2001.

At trial, Appellant attempted to offer the testimony of his former attorney, Guy Jones, for the purpose of establishing discrepancies in the existence and content of a handwritten police offense report. Appellant was prevented from offering that testimony when the trial court ruled that, in order to present that evidence, he would have to waive his attorney-client privilege. According to Jones's testimony presented during Appellant's Bill of Exceptions, the police offense report in the district attorney's file was a typewritten report which identified the suspect vehicle as a dark blue truck. An earlier, handwritten report (no longer located in the district attorney's file) identified the vehicle as a white truck.

3

According to Jones, the two reports were otherwise identical. The Court of Criminal Appeals determined that the trial court abused its discretion in refusing to allow Jones to testify. *Cameron*, 241 S.W.3d at 22-23. As directed by the Court, we will now conduct a harm analysis on the trial court's refusal to allow Jones to testify.

Harm Analysis

Error in the exclusion of evidence is evaluated under Texas Rule of Appellate Procedure 44.2, with constitutional error evaluated under the "beyond a reasonable doubt standard" of subparagraph (a) and nonconstitutional error evaluated under the "substantial rights" standard of subparagraph (b). Generally, the exclusion of evidence is classified as nonconstitutional error. *Walters v. State,* 247 S.W.3d 204, 218 (Tex.Crim.App. 2007). However, the improper exclusion of evidence can present a constitutional issue if it effectively prevents the accused from presenting relevant evidence that is a vital portion of the case or significantly undermines or precludes the presentation of a defense by the accused. *Potier v. State,* 68 S.W.3d 657, 659-63, 666 (Tex.Crim.App. 2002).

Because we must apply a different standard of review for purposes of harm analysis depending upon whether the erroneous exclusion of evidence was of constitutional dimension, we must first determine whether the trial court's erroneous exclusion of evidence in this case constitutes constitutional or nonconstitutional error.

*Constitutional v. Nonconstitutional Error*

Not every erroneous exclusion of a defendant's evidence amounts to a constitutional violation. *Id.* at 659. Here, the error in question was the erroneous exclusion of Guy Jones's testimony concerning the existence and content of a handwritten police offense report that was identical to the existing typewritten report with the sole exception of the color of the suspect vehicle. Even though the color of the vehicle was never an issue, Appellant sought to impeach the credibility of the police officers' testimony by establishing that they had given conflicting descriptions of Appellant's vehicle and had possibly even altered the offense report. Therefore, the existence of a previous handwritten report and the discrepancy in the color of the vehicle described in the two reports could have been relevant to the credibility of the police officer witnesses for purposes of impeachment.

If the testimony in question had been presented to the jury, and if the jury chose to believe that testimony, then the jury could have determined either that the officers were careless in their investigation at best, or they engaged in the intentional falsification of evidence at worst. However, as more fully discussed hereinbelow, because Appellant was able to attack the credibility of the officers' testimony through the use of other testimony, we cannot say that the exclusion of Jones's testimony significantly undermined the fundamental elements of Appellant's defense. Accordingly, we find that the error did not amount to constitutional error, but was instead, nonconstitutional error.

## Standard of Review

Nonconstitutional error involving the exclusion of evidence requires reversal only if we determine that an appellant's substantial rights were affected. *See* Tex. R. App. P. 44.2(b); *Walters,* 247 S.W.3d at 218. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). In other words, a criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, "has fair assurance that the error did not influence the jury, or had but a slight effect." *Id.*

When the claimed error is the exclusion of a relevant piece of evidence, as is the case here, conducting a meaningful harm analysis necessarily requires consideration of all evidence which was admitted at trial. *Id.* In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including both testimonial and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* The reviewing court must also consider any jury instruction given by the trial judge, the State's theory, any defensive theories, closing arguments, and even voir dire, if material to an appellant's claim. *Id.*

Analysis

In this case, Appellant presented two basic defensive theories: (1) Warden was the sole participant in the offense because she had the narcotics in her possession all along, and (2) the officers misidentified him as being the person in the vehicle from whom Warden acquired the narcotics immediately prior to her delivery of the same to Pickering.

While the exclusion of Jones's testimony came at the conclusion of Appellant's case-in-chief, he did not wait until that moment to introduce his potential defenses. In voir dire, Appellant's counsel questioned the prospective jurors concerning conflicts in testimony, their relationship to law enforcement personnel, their opinions concerning the credibility of police officer witnesses, and the possibility of misidentification of the accused. Appellant's counsel touched upon factors contributing to misidentification, including lighting conditions, distance, personal contact, and prior consumption of alcohol by the person making the identification - all factors Appellant's counsel subsequently developed during cross- examination of the State's witnesses and through the presentation of defense witnesses.

During the State's case-in-chief, Appellant's counsel vigorously cross-examined Officers Pickering and Cash concerning their undercover activities and their ability to positively identify Appellant as the person who delivered narcotics to Warden immediately prior to her delivery to Officer Pickering. The officers were extensively questioned concerning their investigation techniques, including the possibility that Warden had the narcotics hidden in her bra all along. The officers' ability to positively identify Appellant was

also placed into question based upon their consumption of alcohol during the course of their undercover investigation. They were further questioned concerning the lighting conditions in the parking lot, their proximity to the transaction between Warden and the individual in the vehicle, their identification of Appellant and his vehicle, their failure to investigate the telephone records of the phone used by Warden to call her supplier, their failure to have the baggie containing the narcotics fingerprinted, and their decision to delay the arrest of the persons involved.

In his opening statement, Appellant's counsel admitted that Appellant was at the Handle Bar Club on the night in question; however, he also called into question the ability of the officers to positively identify him as the person in the parking lot who might have delivered the narcotics to Warden. Furthermore, he questioned the ability of the officers to identify the vehicle due to their proximity to the transaction and the poor lighting conditions present.

Appellant then offered the testimony of Shelly Cummings and Elliott Brown to confirm his version of the events of the night in question, including Appellant's presence at the bar. Appellant also offered the testimony of Ronald Lehmiller, an investigator, as well as, Ismail Bhai and Roy Wilkins, adjacent business owners, to place into question the lighting conditions in the parking lot and the ability of the officers to identify Appellant, or Appellant's vehicle, as being involved in the narcotics transaction witnessed by them.

Finally, during closing arguments Appellant's counsel again questioned the investigation techniques of Officers Pickering and Cash, calling into question their reliability

and credibility. Appellant's closing arguments could be paraphrased as, no audio tape of the transaction; no immediate arrest and suspect identification; no fingerprint investigation; no marked money; no bogus stop, search and seizure; no investigation of the telephone records, in other words "nothing but questions." In fact, Appellant's entire closing argument can be seen as a criticism of the officers investigation and a plea for the jury to rely upon the principle of reasonable doubt to acquit Appellant.

Because the State did not offer any evidence that directly contradicted Appellant's first defensive theory, the "Warden did it" theory, Appellant's postulation of that theory did not turn on the credibility of the officers' testimony. Therefore, the erroneous exclusion of Jones's testimony did not preclude or hinder Appellant in his presentation of that defense.

As to the defensive theory of misidentification, the credibility of the officers was called into question. The officers testified that Appellant came into the bar, made eye contact with Warden, and then returned to his vehicle in the parking lot where he subsequently delivered the narcotics to Warden. Their testimony directly tied Appellant to the delivery of the narcotics. Their positive identification of Appellant did not, however, depend solely upon their ability to identify the occupant of a vehicle in a dark parking lot. Their identification was bolstered by Appellant's prior appearance in the bar, as well as his being introduced to the officers as "Mike," and his direct comment to the officers concerning their satisfaction with the purchase.

Another relevant factor in a harm analysis is the character of the error and how it might be considered in connection with other evidence in the case. *Motilla v. State,* 78

9

S.W.3d 352, 359 (Tex.Crim.App. 2002). In this case, the excluded evidence did not go directly to the issue of guilt or innocence but was instead relevant to the collateral issue of credibility of the State's key witnesses. Though relevant, the exclusion of the evidence did not prevent Appellant from attacking their credibility. Therefore, in this case, the character of the error amounted to the exclusion of supporting evidence, not the exclusion of all evidence relevant to the issue of credibility of the witnesses.

Finally, though not outcome determinative, evidence of Appellant's guilt is also a factor to consider in conducting a harm analysis under Rule 44.2(b). *Id.* Subject to a determination of their credibility, both of the State's witnesses provided direct testimony concerning Appellant's guilt. The testimony of either witness, taken alone, would have been sufficient to support a finding of guilt. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and it may choose to believe all, some, or none of the testimony presented. We must, therefore, give great deference to the jury's determinations, particularly those concerning the weight of the evidence and the credibility of the witnesses. *Johnson v. State,* 23 S.W.3d 1, 14 (Tex.Crim.App. 2000).

Based upon our analysis of the entire record, from voir dire through final closing arguments, we cannot say that the exclusion of Jones's testimony had a substantial and injurious effect or influence in determining the jury's verdict. In other words, we are able to say that we have a "fair assurance" that the error did not did not significantly impair the presentation of Appellant's misidentification defensive theory, or otherwise influence the jury, or had but a slight effect. *Morales,* 32 S.W.3d at 867.

10

## Conclusion

Accordingly, we find the error to be harmless. Appellant's first issue is overruled. Having previously overruled Appellant's second issue pertaining to ineffective assistance of counsel, *Cameron v. State*, No. 07-03-0362-CR, 2004 WL 1839794 (Tex.App.–Amarillo Aug. 16, 2004) (not designated for publication), the trial court's judgment is affirmed.

Per Curiam

Do not publish.