NO. 07-09-0132-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 29, 2009
______________________________

MARIO GARZA, JR.,

                                                                                                 Appellant

V.

THE STATE OF TEXAS,

                                                                                                 Appellee
_________________________________

FROM THE 242nd DISTRICT COURT OF HALE COUNTY;

NO. B16656-0602; HON. EDWARD SELF, PRESIDING
_______________________________
 
Abatement and Remand
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          Appellant Mario Garza, Jr. appeals his conviction for possession of a controlled
substance. The clerk’s record was filed on June 8, 2009. The reporter’s record was due
on May 26, 2009. On May 29, 2009, the reporter filed a motion for extension of time to
file the record, which was granted to June 25, 2009. On June 24, 2009, the reporter filed
a second extension request, stating that appellant has not paid or made arrangements to
pay for the record.
          Accordingly, we abate this appeal and remand the cause to the 242nd District Court
of Hale County (trial court) for further proceedings. Upon remand, the trial court shall
immediately cause notice of a hearing to be given and, thereafter, conduct a hearing to
determine the following:
          1. whether appellant desires to prosecute the appeal; 
 2. whether appellant is indigent;
          3. whether the appellant is entitled to a free appellate record due to his
indigency; 
 4. when the reporter’s record can reasonably be filed (given the length of
trial and size of the record) in a manner that does not unduly delay the
prosecution of this appeal.
 

          The trial court shall 1) execute findings of fact and conclusions of law addressing
the foregoing issues, and 2) cause to be developed a supplemental clerk’s record
containing its findings of fact and conclusions of law and all orders it may issue as a result
of its hearing in this matter. Additionally, the district court shall then cause the
supplemental record to be filed with the clerk of this court on or before July 29, 2009.
Should further time be needed by the trial court to perform these tasks, then same must
be requested before July 29, 2009.
          It is so ordered.
                                                                           Per Curiam
 
Do not publish.



e, he would have to waive his attorney-client privilege. According to Jones’s testimony presented during Appellant’s Bill of
Exceptions, the police offense report in the district attorney’s file was a typewritten report
which identified the suspect vehicle as a dark blue truck. An earlier, handwritten report (no
longer located in the district attorney’s file) identified the vehicle as a white truck. 
According to Jones, the two reports were otherwise identical. The Court of Criminal
Appeals determined that the trial court abused its discretion in refusing to allow Jones to
testify. Cameron, 241 S.W.3d at 22-23. As directed by the Court, we will now conduct a
harm analysis on the trial court’s refusal to allow Jones to testify. 
Harm Analysis
          Error in the exclusion of evidence is evaluated under Texas Rule of Appellate
Procedure 44.2, with constitutional error evaluated under the “beyond a reasonable doubt
standard” of subparagraph (a) and nonconstitutional error evaluated under the “substantial
rights” standard of subparagraph (b). Generally, the exclusion of evidence is classified as
nonconstitutional error. Walters v. State, 247 S.W.3d 204, 218 (Tex.Crim.App. 2007).
However, the improper exclusion of evidence can present a constitutional issue if it
effectively prevents the accused from presenting relevant evidence that is a vital portion
of the case or significantly undermines or precludes the presentation of a defense by the
accused. Potier v. State, 68 S.W.3d 657, 659-63, 666 (Tex.Crim.App. 2002). 
          Because we must apply a different standard of review for purposes of harm analysis
depending upon whether the erroneous exclusion of evidence was of constitutional
dimension, we must first determine whether the trial court’s erroneous exclusion of
evidence in this case constitutes constitutional or nonconstitutional error.
 

Constitutional v. Nonconstitutional Error
          Not every erroneous exclusion of a defendant’s evidence amounts to a constitutional
violation. Id. at 659. Here, the error in question was the erroneous exclusion of Guy
Jones’s testimony concerning the existence and content of a handwritten police offense
report that was identical to the existing typewritten report with the sole exception of the
color of the suspect vehicle. Even though the color of the vehicle was never an issue,
Appellant sought to impeach the credibility of the police officers’ testimony by establishing
that they had given conflicting descriptions of Appellant’s vehicle and had possibly even
altered the offense report. Therefore, the existence of a previous handwritten report and
the discrepancy in the color of the vehicle described in the two reports could have been
relevant to the credibility of the police officer witnesses for purposes of impeachment.
            If the testimony in question had been presented to the jury, and if the jury chose to
believe that testimony, then the jury could have determined either that the officers were
careless in their investigation at best, or they engaged in the intentional falsification of
evidence at worst. However, as more fully discussed hereinbelow, because Appellant was
able to attack the credibility of the officers’ testimony through the use of other testimony,
we cannot say that the exclusion of Jones’s testimony significantly undermined the
fundamental elements of Appellant’s defense. Accordingly, we find that the error did not
amount to constitutional error, but was instead, nonconstitutional error.
 

Standard of Review
          Nonconstitutional error involving the exclusion of evidence requires reversal only if
we determine that an appellant's substantial rights were affected. See Tex. R. App. P.
44.2(b); Walters, 247 S.W.3d at 218. A substantial right is affected when the error had a
substantial and injurious effect or influence in determining the jury's verdict. Morales v.
State, 32 S.W.3d 862, 867 (Tex.Crim.App. 2000). In other words, a criminal conviction
should not be overturned for nonconstitutional error if the appellate court, after examining
the record as a whole, “has fair assurance that the error did not influence the jury, or had
but a slight effect.” Id.
          When the claimed error is the exclusion of a relevant piece of evidence, as is the
case here, conducting a meaningful harm analysis necessarily requires consideration of
all evidence which was admitted at trial. Id. In assessing the likelihood that the jury's
decision was adversely affected by the error, the appellate court should consider
everything in the record, including both testimonial and physical evidence admitted for the
jury's consideration, the nature of the evidence supporting the verdict, the character of the
alleged error and how it might be considered in connection with other evidence in the case.
Id. The reviewing court must also consider any jury instruction given by the trial judge, the
State's theory, any defensive theories, closing arguments, and even voir dire, if material
to an appellant's claim. Id.
 

Analysis
          In this case, Appellant presented two basic defensive theories: (1) Warden was the
sole participant in the offense because she had the narcotics in her possession all along,
and (2) the officers misidentified him as being the person in the vehicle from whom Warden
acquired the narcotics immediately prior to her delivery of the same to Pickering. 
          While the exclusion of Jones’s testimony came at the conclusion of Appellant’s
case-in-chief, he did not wait until that moment to introduce his potential defenses. In voir
dire, Appellant’s counsel questioned the prospective jurors concerning conflicts in
testimony, their relationship to law enforcement personnel, their opinions concerning the
credibility of police officer witnesses, and the possibility of misidentification of the accused. 
Appellant’s counsel touched upon factors contributing to misidentification, including lighting
conditions, distance, personal contact, and prior consumption of alcohol by the person
making the identification - all factors Appellant’s counsel subsequently developed during
cross- examination of the State’s witnesses and through the presentation of defense
witnesses.
          During the State’s case-in-chief, Appellant’s counsel vigorously cross-examined
Officers Pickering and Cash concerning their undercover activities and their ability to
positively identify Appellant as the person who delivered narcotics to Warden immediately
prior to her delivery to Officer Pickering. The officers were extensively questioned
concerning their investigation techniques, including the possibility that Warden had the
narcotics hidden in her bra all along. The officers’ ability to positively identify Appellant was
also placed into question based upon their consumption of alcohol during the course of
their undercover investigation. They were further questioned concerning the lighting
conditions in the parking lot, their proximity to the transaction between Warden and the
individual in the vehicle, their identification of Appellant and his vehicle, their failure to
investigate the telephone records of the phone used by Warden to call her supplier, their
failure to have the baggie containing the narcotics fingerprinted, and their decision to delay
the arrest of the persons involved. 
          In his opening statement, Appellant’s counsel admitted that Appellant was at the
Handle Bar Club on the night in question; however, he also called into question the ability
of the officers to positively identify him as the person in the parking lot who might have
delivered the narcotics to Warden. Furthermore, he questioned the ability of the officers
to identify the vehicle due to their proximity to the transaction and the poor lighting
conditions present. 
          Appellant then offered the testimony of Shelly Cummings and Elliott Brown to
confirm his version of the events of the night in question, including Appellant’s presence
at the bar. Appellant also offered the testimony of Ronald Lehmiller, an investigator, as
well as, Ismail Bhai and Roy Wilkins, adjacent business owners, to place into question the
lighting conditions in the parking lot and the ability of the officers to identify Appellant, or
Appellant’s vehicle, as being involved in the narcotics transaction witnessed by them. 
          Finally, during closing arguments Appellant’s counsel again questioned the
investigation techniques of Officers Pickering and Cash, calling into question their reliability
and credibility. Appellant’s closing arguments could be paraphrased as, no audio tape of
the transaction; no immediate arrest and suspect identification; no fingerprint investigation;
no marked money; no bogus stop, search and seizure; no investigation of the telephone
records, in other words “nothing but questions.” In fact, Appellant’s entire closing
argument can be seen as a criticism of the officers investigation and a plea for the jury to
rely upon the principle of reasonable doubt to acquit Appellant. 
           Because the State did not offer any evidence that directly contradicted Appellant’s
first defensive theory, the “Warden did it” theory, Appellant’s postulation of that theory did
not turn on the credibility of the officers’ testimony. Therefore, the erroneous exclusion of
Jones’s testimony did not preclude or hinder Appellant in his presentation of that defense.
          As to the defensive theory of misidentification, the credibility of the officers was
called into question. The officers testified that Appellant came into the bar, made eye
contact with Warden, and then returned to his vehicle in the parking lot where he
subsequently delivered the narcotics to Warden. Their testimony directly tied Appellant to
the delivery of the narcotics. Their positive identification of Appellant did not, however,
depend solely upon their ability to identify the occupant of a vehicle in a dark parking lot. 
Their identification was bolstered by Appellant’s prior appearance in the bar, as well as his
being introduced to the officers as “Mike,” and his direct comment to the officers
concerning their satisfaction with the purchase.
          Another relevant factor in a harm analysis is the character of the error and how it
might be considered in connection with other evidence in the case. Motilla v. State, 78
S.W.3d 352, 359 (Tex.Crim.App. 2002). In this case, the excluded evidence did not go
directly to the issue of guilt or innocence but was instead relevant to the collateral issue of
credibility of the State’s key witnesses. Though relevant, the exclusion of the evidence did
not prevent Appellant from attacking their credibility. Therefore, in this case, the character
of the error amounted to the exclusion of supporting evidence, not the exclusion of all
evidence relevant to the issue of credibility of the witnesses.
          Finally, though not outcome determinative, evidence of Appellant’s guilt is also a
factor to consider in conducting a harm analysis under Rule 44.2(b). Id. Subject to a
determination of their credibility, both of the State’s witnesses provided direct testimony
concerning Appellant’s guilt. The testimony of either witness, taken alone, would have
been sufficient to support a finding of guilt. The jury is the sole judge of the credibility of
the witnesses and the weight to be given their testimony, and it may choose to believe all,
some, or none of the testimony presented. We must, therefore, give great deference to
the jury’s determinations, particularly those concerning the weight of the evidence and the
credibility of the witnesses. Johnson v. State, 23 S.W.3d 1, 14 (Tex.Crim.App. 2000).
          Based upon our analysis of the entire record, from voir dire through final closing
arguments, we cannot say that the exclusion of Jones’s testimony had a substantial and
injurious effect or influence in determining the jury’s verdict. In other words, we are able
to say that we have a “fair assurance” that the error did not did not significantly impair the
presentation of Appellant’s misidentification defensive theory, or otherwise influence the
jury, or had but a slight effect. Morales, 32 S.W.3d at 867.  
Conclusion
          Accordingly, we find the error to be harmless. Appellant’s first issue is overruled. 
Having previously overruled Appellant’s second issue pertaining to ineffective assistance
of counsel, Cameron v. State, No. 07-03-0362-CR, 2004 WL 1839794 (Tex.App.–Amarillo
Aug. 16, 2004) (not designated for publication), the trial court’s judgment is affirmed. 
                                                                                      Per Curiam
 
 
Do not publish.