**Opinion issued April 21, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00686-CR

————————————

**CHRISTIAN AVERY FRANKLYN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1720687**

---

## MEMORANDUM OPINION

A jury convicted Christian Avery Franklyn of the second-degree felony offense of sexual assault, and he subsequently entered a plea agreement with the

State for a six-year prison sentence.[1] In a single issue on appeal,[2] Franklyn contends that the trial court abused its discretion by admitting his two remote prior convictions while excluding the complainant's remote prior conviction, all of which were offered for impeachment purposes under Rule of Evidence 609(b). Franklyn further contends that these evidentiary rulings were harmful. We affirm.

## Background

In October 2019, Alexsis Mitchell rented a three-story townhouse in Houston to host her birthday party. She invited several friends, many of whom she had attended high school with ten years earlier. Three friends are relevant: F.J. (Faye),[3] the complainant and Mitchell's best friend; Shabrittaney Graham; and Franklyn. Alcohol was served at the party, and some attendees smoked marijuana on the porch.

Faye arrived around 11 p.m. after the party had started. She had worked a twelve-hour shift the night before and had not slept since the day before the party. She drank three shots of Hennessy shortly after arriving. She went outside to smoke marijuana, and then she had a few more shots and a margarita. She eventually sat at a table mingling with Graham and others. Faye testified that she was intoxicated and

---

[1] *See* TEX. PENAL CODE § 22.011(a)(1)(A), (b)(3), (5).

[2] In his opening brief, Franklyn asserted two additional issues challenging court costs, but he withdrew these issues in his reply brief. Accordingly, we do not consider Franklyn's second and third issues challenging court costs.

[3] We refer to the complainant by a pseudonym to protect her privacy.

2

had some gaps in her memory, but Mitchell denied seeing her intoxicated, and Graham denied seeing her drink alcohol during the party. Faye briefly fell asleep while sitting at the table, so she decided to go upstairs to sleep.

Franklyn arrived at the party after Faye but before she went upstairs to sleep. Franklyn had taken oxycontin earlier in the day, and he consumed a few alcoholic drinks at the party, but he denied that his memory was affected. After Faye went upstairs to sleep, Franklyn went to use the restroom. The only restrooms in the house were on the top floor where Faye had gone to sleep. While upstairs, Franklyn had sexual intercourse with Faye.

Franklyn and Faye testified about the sexual encounter at trial, and their stories differed. Faye said that she awoke to someone having sex with her, while Franklyn said that Faye was awake when he went upstairs, the two talked for a while, and then she initiated intercourse. They were the only two people in the bedroom at the time. Afterwards, Franklyn returned downstairs. Mitchell asked where he had been because his friends were looking for him so they could leave the party. Franklyn told Mitchell that he was with Faye.

The following day, Faye told Mitchell that she believed someone had sex with her at the party, and she identified Franklyn from his clothing. She denied knowing Franklyn before the party, even though the two had attended the same high school

3

and graduated one year apart. She went to the hospital the day after the party, and a nurse administered a rape kit.

Faye and Franklyn spoke to each other through Instagram and a single phone call after the incident. Faye accused Franklyn of raping her, and he initially denied that they had intercourse. But he eventually admitted to the act and conceded it at trial. Franklyn maintained that the sex was consensual.

Franklyn was charged with sexual assault. Mitchell, Graham, Faye, and Franklyn testified at trial, as did the nurse who administered the rape kit and a forensic analyst who identified Franklyn's DNA on swabs from Faye's vagina.

Faye's trial testimony differed from Mitchell's and Graham's testimony in some respects. For example, Faye testified that 50 people attended the party, and she drank seven or eight shots of liquor from a shot glass. But Mitchell and Graham estimated that 20–25 people attended the party, and they denied seeing Faye intoxicated or drinking alcohol. Faye testified that she had never seen Franklyn before the incident, but Graham testified that Faye and Franklyn sat at a table together during the party. Faye also testified that she planned to spend the night and go to brunch with Mitchell the following day, but Mitchell and Graham testified that only Mitchell planned to spend the night at the rented house and no brunch was ever planned.

During a pretrial conference, the trial court heard the State's motion in limine. The State requested that the parties seek the trial court's permission outside the jury's presence before mentioning that Faye was convicted in 2012 for misdemeanor lying to a police officer. Defense counsel agreed to this request, and the trial court granted it. After hearing the remainder of the State's motion in limine, the court then heard Franklyn's motion to exclude his criminal history under Rule of Evidence 609.

Defense counsel stated that Franklyn intended to testify, and counsel sought to exclude any references to Franklyn's prior criminal history. The State responded that it intended to introduce two misdemeanor theft convictions from 2012. The State acknowledged that these convictions were more than 10 years old, but it argued that because Franklyn's credibility would be at issue if he testified, any prejudice from these remote convictions was attenuated by two more recent offenses: an aggravated robbery charge for which Franklyn successfully completed deferred adjudication and a misdemeanor conviction for possession of marijuana. Defense counsel argued that the probative value of the remote theft convictions did not substantially outweigh their prejudicial effect under Rule 609(b). The trial court admitted the convictions and granted Franklyn's request for a running objection.

Based on the ruling to admit Franklyn's remote convictions, defense counsel asked to revisit the trial court's limine ruling concerning Faye's remote conviction. Counsel essentially saw a "goose-gander" situation: he argued that Faye's conviction

was admissible for the same reason Franklyn's convictions were admissible. The trial court noted that Faye did not have any intervening convictions, a fact which distinguished her remote conviction. The trial court ruled that Faye's conviction was inadmissible.

During cross-examination, Franklyn conceded all elements of sexual assault except the consent element. Once the State established that consent was the only disputed element, it asked one—and only one—question about one of the remote convictions: "[Y]ou're the same Christian Franklyn who was convicted of a misdemeanor theft back in 2012; is that correct?" Franklyn responded, "Yes." Defense counsel requested a limiting instruction, and the trial court instructed the jury that the evidence was limited to assisting the jurors in "passing upon the weight you will give this testimony." The jury charge reiterated this limiting instruction. There was no further mention of Franklyn's prior theft conviction during trial.

The jury found Franklyn guilty of sexual assault. Franklyn entered a plea agreement for eight years' imprisonment with no right of appeal. He then moved for a new punishment trial, arguing that the visiting judge who presided over trial pressured him into accepting a plea deal. The trial court granted the motion. Franklyn subsequently entered a new plea agreement for six years' imprisonment with the right of appeal. This appeal followed.

**Admissibility of Remote Convictions for Impeachment Purposes**

In his sole issue, Franklyn challenges the trial court's evidentiary rulings which admitted his remote convictions and excluded Faye's remote conviction.

## A.        Preservation of Error

The State contends that Franklyn did not preserve his issue for appellate review. According to the State, Franklyn's "only objection" to the trial court's evidentiary rulings "was at the motion in limine hearing." The State concedes that Franklyn obtained a running objection to the ruling to admit his remote convictions, but it argues that he did not mention the running objection when the State asked him about one of the convictions during trial. The State further argues that Franklyn "never attempted to impeach the complaining witness with her prior conviction." We disagree with these arguments.

At a pretrial conference outside the jury's presence, the trial court heard the State's motion in limine. The State requested that the court order the parties to seek permission prior to making "any reference" before the jury "to the criminal history of any of the State's witnesses that would not otherwise be admissible under the [R]ules of [E]vidence, 609 in particular[.]" Defense counsel acknowledged that Faye had a prior misdemeanor conviction, but he did not intend to mention it and did not oppose the motion in limine on this ground. The trial court granted this limine

request. The court heard the remainder of the State's motion before turning to Franklyn's Rule 609 motion.

In addressing Franklyn's motion, defense counsel stated that Franklyn would testify and argued that his prior criminal history was inadmissible. The State responded that if Franklyn testified, it intended to impeach him with two 2012 misdemeanor convictions for theft. It acknowledged that these convictions were more than 10 years old. But it argued that Franklyn's credibility was at issue in this "he-said-she-said" case, and his more recent "intervening criminal history"—the deferred adjudication for aggravated robbery and the misdemeanor conviction for possession of marijuana—"sort of bolster[s]" the remote theft convictions such that the remote convictions were "not as attenuated or remote as they would otherwise seem[.]" Franklyn argued that the probative value of the remote convictions did not substantially outweigh their prejudicial effect. The trial court denied Franklyn's motion, ruled that Franklyn's two remote theft convictions were admissible, and granted defense counsel's request for a running objection.

Upon receiving this adverse ruling, defense counsel asked the court to revisit the limine ruling on Faye's remote conviction. Counsel argued that this conviction should be admissible for impeachment purposes. The State responded that Faye's remote conviction was distinguishable from Franklyn's because Faye had no intervening criminal history. Defense counsel agreed that Faye lacked any

intervening criminal history, but he argued that her remote conviction was admissible under Rule 609 for the same reasons Franklyn's remote convictions were admissible. The trial court excluded Faye's remote conviction.

During trial, the State asked Franklyn if he had been convicted of misdemeanor theft in 2012. Without objection, he answered, "Yes." Neither party mentioned the conviction again during trial.

The State is correct that a ruling on a motion in limine is a preliminary ruling that does not preserve error for appellate review. *See Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003). Such a ruling merely prohibits the parties from mentioning certain evidence to the jury until a hearing has been held outside the jury's presence to determine the admissibility of the evidence. *Id.* at 14. Here, Franklyn raised both complaints after the portion of the hearing on the State's motion in limine had concluded. He complained that his own remote convictions were inadmissible in support of his motion to exclude the evidence under Rule 609, not in response to the State's motion in limine.

He also raised his complaint about Faye's remote conviction during the hearing on his Rule 609 motion. True, the issue first arose in the State's motion in limine, and Franklyn initially did not oppose the State's request to have the parties seek permission prior to referencing Faye's remote conviction. But after the trial court admitted his remote convictions, he sought reconsideration of the motion in

9

limine ruling concerning Faye's remote conviction. And his complaint went further than merely requesting a hearing outside the jury's presence: He complained that Faye's remote conviction was admissible for impeachment purposes, and the trial court ruled that it was not admissible.

To preserve a complaint for appellate review, the record must show that the complaint was timely made with sufficient specificity in the trial court and that the court expressly or implicitly ruled on the complaint. TEX. R. APP. P. 33.1(a). Franklyn met these requirements. He argued that his remote convictions for theft were inadmissible, but if they were admissible, then so too was Faye's similar remote conviction. The trial court admitted Franklyn's remote convictions and excluded Faye's remote conviction. The rulings were not limited to requiring the parties to request permission before mentioning any of the convictions before the jury. This is all Rule 33.1(a) required to preserve both rulings for appellate review.

We disagree with the State that to preserve error, Franklyn was required to attempt to impeach Faye with the remote conviction when he cross-examined her. He had already obtained a ruling on his complaint. Attempting to impeach Faye with the excluded evidence would have violated the court's ruling.

Nor was Franklyn required to repeat his running objection when the State asked him about one of his remote convictions during trial. As the State points out, "the law in Texas requires a party to continue to object each time inadmissible

evidence is offered." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (quotation omitted). But there are two important exceptions to this rule: a party may either obtain a running objection or request a hearing outside the jury's presence. *Id.*; *see also* TEX. R. EVID. 103(a) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."). Here, the trial court ruled that Franklyn's conviction was admissible in a hearing outside the jury's presence, and Franklyn obtained a running objection. Under well-established case law and the Rules of Evidence, Franklyn was not required to renew his complaint to preserve error. We hold that Franklyn preserved his issue for appellate review.

## B. Error

Franklyn challenges the trial court's rulings that admitted his remote convictions and excluded Faye's remote conviction. He acknowledges that a trial court has discretion in making evidentiary rulings, but he cogently argues that the exercise of discretion here was corrupted by a mistaken insistence on treating similar situations differently. We will assume for the purposes of this opinion that he has the better of the argument as to admissibility.

In particular, we will assume that the trial court abused its discretion by admitting Franklyn's remote convictions while simultaneously excluding Faye's remote conviction under Rule 609(b). We turn to whether this error was harmful.

11

## C.    Harm

The remaining question is whether Franklyn can establish harm. Franklyn argues that the erroneous rulings were reversible because the "trial turned entirely on credibility": The "jury had to decide whether to believe [Franklyn's] testimony that the sex was consensual or [Faye's] testimony that it was not." Franklyn's "theft conviction [the only one which the jury heard] gave the jury a piece of official, independent evidence from which it could have concluded that he was a criminal unworthy of belief" while the jury was "prevented from learning that [Faye] had been convicted of lying to a police officer—a crime that bears directly on truthfulness." He concludes that "that difference may well have been decisive." The State agrees that the "major issue" at trial was whether Faye "could have consented to the activity": "Her testimony was that she did not, his testimony was that she did."

The parties agree that a trial court's erroneous evidentiary ruling is non-constitutional error. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Non-constitutional error requires reversal only if it affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). The Court of Criminal Appeals has construed this rule to mean that error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373.

Substantial rights are not affected if an appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had only a slight effect. *Id.* The reviewing court should consider the entire record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how the alleged error might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 357–58 (Tex. Crim. App. 2002) (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). The court may also consider the jury charge, the State's theory and any defensive theories, closing arguments, and voir dire, if material to the defendant's claims. *Morales*, 32 S.W.3d at 867.

Considering the entire record, we cannot conclude that the error in excluding Faye's prior conviction caused a substantial and injurious effect or influence in determining the jury's verdict. We acknowledge that the credibility of Franklyn and Faye bore heavily on the disputed element of consent. They were the only two people in the bedroom where the alleged sexual assault occurred, and they agreed at trial that sexual intercourse had occurred. They disagreed only about whether Faye consented to have sex with Franklyn.

But other evidence weighed on the jury's determination of Faye's credibility. For example, Faye testified that she had consumed numerous alcoholic beverages

13

and smoked marijuana at the party. She also testified that she had gaps in her memory, which is relevant to her credibility about the events of the night. Her testimony also differed in some respects from other witnesses' testimony. Faye testified that 50 people attended the party, while other testimony indicated that only about 20 or 25 people attended the party. Faye testified that she drank seven or eight shots of liquor from a shot glass, while others denied seeing her drink any alcohol or become intoxicated. Faye testified that she did not see Franklyn sitting at a table with her during the party, but another witness contradicted this testimony. Faye testified that she planned to stay the night at the house and have brunch with Mitchell the next day, but Mitchell and another witness denied both facts.

With these factors, it is unlikely that evidence of her misdemeanor conviction more than ten years earlier would have changed the credibility determination. Such evidence likely would have consisted of only a single yes-or-no question to this fairly young witness about something that occurred when she was even younger. Adding those ten or fifteen seconds to the trial probably would not have changed anyone's view of anything, as the jury likely did not labor under any illusion about the party in general or these two witnesses in particular.

Similarly, Franklyn's credibility did not come down to the passing mention of his twelve-year-old misdemeanor theft conviction—a fact never mentioned again at trial. The jury heard that Franklyn had taken oxycontin the day of the alleged assault.

The jury also heard that he denied having sexual intercourse with Faye at all when confronted about it, and he maintained the lie for some time before finally admitting to her that they had sex. This lie likely diminished his credibility far more than the remote conviction, especially because the State emphasized the lie during closing.

Regarding the incident itself, Faye testified that she had not slept for more than 24 hours when she arrived at the party. She fell asleep while sitting at a table during the party, went upstairs to sleep, and awoke to someone she later identified as Franklyn penetrating her. This evidence was sufficient to support the disputed lack of consent element of sexual assault.

In sum, we have a fair assurance from examining the record as a whole that the trial court's erroneous evidentiary rulings did not influence the jury or had only a slight effect. *See Gonzalez*, 544 S.W.3d at 373. Accordingly, we hold that the error was not harmful.

## Conclusion

We affirm the judgment of conviction.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

15