**Affirmed and Opinion filed June 12, 2012.**



In The

# Fourteenth Court of Appeals

———————————

### NO. 14-11-00011-CR
———————————

### IRA CRAIN, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1229090**

## OPINION

Appellant Ira Crain appeals her conviction for theft of over $200,000. After appellant pleaded "no contest," the trial court conducted a sentencing hearing and assessed punishment at seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a sole issue on appeal, appellant claims that the trial court committed reversible error by allowing the State to introduce evidence at the

sentencing hearing of an extraneous offense for which no notice was given over a timely objection. We affirm.

## BACKGROUND

Sam Kelsall III died in March 2003, leaving his son Sam Kelsall IV, an attorney, as executor of his estate. Kelsall IV believed the size of the estate was approximately $650,000. However, in 2007, he received a notice from the Internal Revenue Service informing him that taxes had not been paid on earnings from a Morgan Stanley investment account opened by his father over which appellant, Kelsall III's accountant, had power of attorney.[1] Kelsall IV had no prior knowledge of the Morgan Stanley account, as account statements were being sent to appellant's but not Kelsall III's address. Knowing that appellant was his father's accountant, Kelsall IV had corresponded with appellant after his father's death to obtain information about past tax returns, yet appellant never informed Kelsall IV about the Morgan Stanley account.

Appellant and Kelsall III also had opened a checking account as joint tenants with right of survivorship.[2] A certified public accountant (CPA) who had been retained by Kelsall IV testified it would be "[v]ery unusual" for a CPA to open a checking account with right of survivorship as a joint tenant with a client. Approximately $350,000 of Kelsall III's money had been transferred from the Morgan Stanley account into the joint checking account: $300,000 in January 2003 and $47,000 in 2007, several years after Kelsall III died. Another $300,000 was withdrawn from the Morgan Stanley account to fund a promissory note in October 2003, also after Kelsall III's death.

---

[1] Even though his father had signed a document granting limited power of attorney to appellant, Kelsall IV believed his father thought the document "was part of opening the account at Morgan Stanley, not that it was a power of attorney."

[2] A right of survivorship is "[a] joint tenant's right to succeed to the whole estate upon the death of the other joint tenant." *Black's Law Dictionary* 615 (2d pocket ed. 1996).

2

After receiving the IRS notice, Kelsall IV asked appellant to help resolve the delinquent tax issue with the IRS. Appellant agreed to cooperate, but never did, instead offering various excuses as to why she could not. Therefore, Kelsall IV sought a turnover order in probate court in 2008, which was granted. Appellant never turned over the account records, but repaid $781,000 to Kelsall III's estate pursuant to the turnover order, which included the funds that were transferred out of the Morgan Stanley account plus some interest.

As stated, appellant pleaded "no contest" to theft, and the court set the matter for a sentencing hearing. Three weeks before the sentencing hearing, appellant filed a document entitled "Request," in which appellant "move[d] the court to order the prosecution to give the Defendant written notice prior to sentencing of any extraneous offense or other act or conduct of the Defendant not subject of this indictment which the State intends to introduce into evidence against Defendant."[3] The State subsequently filed its "Notice of Intent to Use Prior Convictions and/or Extraneous Offenses for Impeachment or Punishment," specifying it did not believe it was required to provide notice, but was doing so "as a courtesy to defense counsel." Appellant thereafter filed a "Motion for Discovery, Production and Inspection of Evidence" requesting the court to order production by the State of "written specification of all prior misconduct and evidence of extraneous offenses which the State intends to use against the [appellant]." The trial court never ruled on the Request or Motion.

Three witnesses testified at the sentencing hearing regarding real estate transactions involving appellant in a subdivision called Kings Colony. Appellant and a company called Colony Ridge both owned property in Kings Colony. Trey Harris, an owner of

---

[3] The document was entitled "Defendant's Request for Notice of Extraneous Offenses Pursuant to Fifth, Sixth and Fourteenth Amendments of the US Constitution, Article I, Secs [sic] 10 & 19 of the Texas Constitution, Rules 404(b), 609(f) of the Texas Rules of Evidence, & 37.07 and 38.37 of the Texas Code of Criminal Procedure." A request under article 38.37 of the Code of Criminal Procedure does not require a ruling by the court; however, despite its caption, appellant's Request does ask for court action. *See* Tex. Code Crim. Proc. art. 38.37 § 3.

Colony Ridge, testified he met appellant sometime between 2002 and 2004 when she approached him about buying property that Colony Ridge had purchased from a tax trust in 2000 in Kings Colony. When Harris refused to sell appellant the property, she threatened to have him audited by some friends at the IRS, thereby keeping his accounts tied up for years and preventing him from conducting business. Appellant's attorney objected to this testimony on the basis that it was an extraneous offense of which the State had not provided notice of its intent to introduce at trial.

Harris also testified that appellant had been the controlling member on the board of directors of the homeowners' association for Kings Colony and refused to provide records to Colony Ridge. Colony Ridge sued appellant for the records, and Colony Ridge gained control of the homeowners' association during the pendency of that lawsuit. Colony Ridge then discovered approximately $400,000 had been misappropriated while appellant controlled the homeowners' association.

Dora Valdizon testified that she attempted to purchase land in Kings Colony from appellant in 2008. Valdizon made an initial down payment of $2,000 and signed a contract requiring her to make subsequent payments of $200 a month. She made payments until November 2009, but then stopped because she learned that title to the property had never been transferred into her name. After being indicted, appellant refunded Valdizon's money. During cross-examination, appellant's attorney asked Valdizon if she knew that appellant and Colony Ridge had been adversaries in the lawsuit involving Kings Colony. Valdizon responded that she knew something about the lawsuit, and appellant's attorney elicited testimony that there was "bad blood" between Colony Ridge and appellant.[4]

---

[4] Appellant's attorney asked, "And it was clear to you that there was bad blood between Colony Ridge and [appellant]?" to which Valdizon responded, "Yes, when I was already—when I had that problem."

Mora Ramirez Garza attempted to purchase land in Kings Colony from appellant in 2005. Garza paid a $500 deposit and made payments until she paid off the balance in July 2008. While she was making payments, Garza and her family were working to clear the land. After Garza paid off the property, she had difficulty finding appellant to obtain the deed. When Garza eventually located appellant, appellant told Garza she had an accident and Garza would have to wait for the deed. Appellant eventually provided a deed to Garza, but appellant told Garza a week before the sentencing hearing that appellant had made a mistake, did not own the land that she had sold Garza, and offered Garza another tract of land. Thus, the deed provided to Garza was not legally valid. Garza refused to take the other tract, and appellant offered to repay Garza. No objection was made to this testimony.

## EXTRANEOUS OFFENSE

In her sole issue, appellant argues the trial court erred by allowing the State to elicit testimony from Harris regarding appellant's threat to have him audited by the IRS because appellant did not receive notice of the State's intent to introduce that testimony. The State argues that, under the circumstances of this case, it was not required to give this notice, but even if it were, (1) appellant opened the door to the testimony by eliciting testimony from Valdizon that there was "bad blood" between appellant and Colony Ridge and (2) admission of the testimony was harmless.

We review the admission of evidence of extraneous offenses for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). Pursuant to article 37.07 of the Code of Criminal Procedure, the State may introduce evidence of "an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant . . . regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. art. 37.07 § 3(a)(1). The attorney representing the State is required to give notice of the State's intent to

5

introduce such evidence if the defendant makes a timely request.[5]   *Id*. § 3(g).   However, a motion requesting the trial court to order the State to provide notice of intent to offer evidence of extraneous offenses does not trigger the notice requirements of article 37.07 without a corresponding order from the trial court.   *Mitchell v. State*, 982 S.W.2d 425, 427 (Tex. Crim. App. 1998) ("Pursuant to our recognition . . . of the distinction between a request for action addressed to the trial court and a request for action addressed to the State, we hold that when a document seeks trial court action, it cannot also serve as a request for notice triggering the State's duty under Article 37.07, § 3(g).").

Here, appellant asked the trial court to order the State to provide notice in both the Request and Motion.   The trial court never ruled on the Request or Motion, so the State was not required to give notice.   *See id*.   However, the State voluntarily provided the Notice.   Appellant argues the State was estopped from contending appellant "could not fairly rely on the [N]otice," which included 17 extraneous offenses or bad acts the State intended to introduce at the sentencing hearing, because the Notice omitted any reference to appellant's threat to have Harris audited.[6]

This court has not decided whether the State would be limited to the extraneous offenses listed on a voluntarily provided notice.[7]   However, we need not reach the issue

---

[5] Generally, the State's failure to provide notice of its intent to offer extraneous offense evidence after a defendant's timely request directed to the State renders the evidence inadmissible.   *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no. pet.).

[6] Appellant's attorney argued at the sentencing hearing that this extraneous offense could be a conspiracy, whereas appellant argues on appeal that it amounted to extortion.

[7] At least one court of appeals has held that a defendant may not rely on the State's voluntary notice as including every extraneous offense the State intends to introduce.   *See Woodward v. State*, 170 S.W.3d 726, 729 (Tex. App.—Waco 2005, pet. ref'd) ("We refuse to 'encourage gamesmanship' and shift the burden to the State to make sure the defendant either provides notice to the State or sets his motion for a hearing, or to penalize the State for giving some notice when it was not required to give any notice.") (citing *Mitchell*, 982 S.W.2d at 427).

here because we find, even if the trial court erred in admitting the testimony in issue, such error was harmless.[8]

When evidence about extraneous offenses or bad acts without final convictions is improperly admitted without notice over an appellant's valid objection, we still must determine whether it was reversible error affecting appellant's substantial rights. *Brooks v. State*, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing Tex. R. App. P. 44.2(b) and *Johnson v. State*, 43 S.W.3d 1, 3–4 (Tex. Crim. App. 2001)). In this context, error affects a substantial right when it has a substantial and injurious effect or influence in determining the trial court's sentencing decision. *Id.* (citing *Johnson*, 43 S.W.3d at 4).

Theft over $200,000 carries a maximum sentence of life imprisonment and a $10,000 fine. Tex. Penal Code §§ 12.32, 31.03(a), (e)(7). Appellant requested community supervision, but the State requested imprisonment. Appellant was sentenced to seven years' imprisonment, a sentence at the low end of the range of possible punishment. Moreover, the State introduced evidence of three other extraneous offenses or bad acts to which appellant did not object—two involving fraudulent land sales and one involving misappropriation of a large amount of funds.[9]

Given the sentence assessed by the trial court and the evidence of appellant's other bad acts presented during the sentencing hearing, we conclude that the failure of the State to give notice (even if required) of its intent to introduce testimony involving appellant's threat to have Harris audited did not have a substantial and injurious effect or influence in determining the trial court's sentencing decision. *See Brooks*, 76 S.W.3d at 436 (finding

---

[8] Likewise, we do not address whether appellant "opened the door" to Harris's testimony regarding appellant's threat to have him audited by eliciting the "bad blood" testimony.

[9] As set forth above, the State elicited testimony that (1) the land for which Valdizon paid appellant was never transferred to Valdizon; (2) appellant did not own the land for which Garza paid her and that Garza and her family worked to clear; and (3) appellant misappropriated $400,000 of funds belonging to Kings Colony.

7

harmless error resulting from State's failure to give notice under article 37.07 in light of appellant's prior conviction, trial court statement that its punishment determination would not be based on any prior arrest or offense for which there was no final conviction, and 40-year sentence given by trial court after State requested 60-year sentence); *see also Patton v. State*, 25 S.W.3d 387, 394 (Tex. App.—Austin 2000, pet. ref'd) (holding even if admission of prior conviction for criminal mischief during punishment phase were erroneous, it would not have been reversible error when jury heard evidence of another charge and three other prior convictions and State asked for maximum punishment of 20 years' imprisonment but jury assessed punishment at seven years' imprisonment). Thus, even if the trial court's admission of the testimony were error, it was harmless. We overrule appellant's sole issue.

We affirm the judgment of the trial court.

/s/     Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Seymore, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).