**Reversed and Remanded and Opinion filed September 15, 2020.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-19-00386-CR

**JUAN MACEDO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1494135**

# O P I N I O N

A jury convicted appellant Juan Macedo of murdering his wife and sentenced him to life in prison. Appellant seeks a new trial on punishment for two reasons. First, appellant asserts that the trial court, during the punishment phase of trial, erroneously admitted over appellant's hearsay objection a 2002 police offense report regarding a spousal abuse offense against the decedent, to which appellant purportedly pleaded guilty. Second, appellant urges that his counsel was ineffective for not objecting to the offense report on Confrontation Clause grounds.

We conclude that the court erred in admitting the offense report because it was hearsay, and the State did not establish its admissibility. Further, on this record, we conclude the error was harmful. We accordingly reverse the sentence and remand for a new punishment trial. Due to our disposition, we do not reach appellant's second issue.

## Background

A Harris County grand jury indicted appellant for the first-degree murder of his wife, alleged to have occurred in August 2015. Appellant pleaded not guilty, and the case went to trial, where the following relevant facts were established.[1]

Appellant appeared at a hospital with the body of his dead wife, who had a gunshot wound to the head. Appellant was covered in blood. At the hospital, he told a Houston Police Department ("HPD") officer working security in the emergency room that he was driving his minivan with the decedent in the front passenger seat when she "got shot." Appellant was unable to provide any details about what happened because he said he was "messing with the radio" when the shooting occurred. Examining the minivan, the officer saw a gun on the floorboard behind the driver's seat. Appellant accompanied another HPD patrol officer to HPD headquarters, where appellant gave a statement containing different and inconsistent versions of the shooting. In his statement, appellant initially claimed that the decedent was the victim of a random shooting, but he later asserted that the decedent intentionally shot herself.

Because appellant does not challenge his conviction on appeal, we need not describe the evidence of guilt in detail. Suffice it to say, blood patterns in the

---

[1] We recite the facts in the light most favorable to the verdict. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011).

2

minivan indicated that the decedent was in the front passenger seat when she was shot and, contrary to appellant's initial statement at the hospital, no one was sitting in the driver's seat at the time of the shooting. The medical examiner who performed the decedent's autopsy described the gunshot wound as a "contact range gunshot wound," meaning the muzzle of the gun was in contact with the decedent's head when it was fired. Appellant's and the decedent's son explained that appellant "always" carried a gun, and he identified the gun found in the minivan as appellant's. A spent bullet casing recovered from the minivan was determined to have been fired from appellant's gun. Additionally, appellant apparently told another jail inmate that he and his wife were arguing in their car after leaving a family gathering, and after they stopped to buy beer, he "pulled a .38 pistol from under the seat and shot her. And then drove her to the hospital."

The decedent's father testified that appellant mistreated the decedent; once, he found her crying and she told him that appellant had threatened her. According to the son, appellant and the decedent were not happy together and fought all the time. He recalled a previous incident when appellant put his head together with the decedent's head, took out his gun, and said "they were both going to die." Appellant then began kicking holes in the wall.

A jury found appellant guilty as charged in the indictment. During the punishment phase, the decedent's father described an incident that occurred in California in 2002 when appellant was arrested "[b]ecause he beat [the decedent]." The State then offered Exhibits 176 and 177 into evidence. Exhibit 177 is a copy of the initial police offense report of the 2002 incident; Exhibit 176 contains copies of appellant's signed guilty plea and waiver of rights regarding the incident along with a record of the court's adjudication of that offense. Appellant's counsel objected to

3

both exhibits as hearsay. The trial court overruled the objection and admitted both exhibits.

The decedent's father testified as to the difficulties he, his wife, and the decedent's and appellant's children had after the decedent's death. The decedent's and appellant's son also testified during punishment. He stated that appellant was "really aggressive" with him and his mom; appellant hit his mom "a lot of times." As well, he testified that he was scared of appellant and that appellant hit him "all the time" with a "horse whip." He described one particular incident:

> We were at some party and all I remember is on the way back home he just started elbowing my mom a lot of times. And my mom was saying, Stop it, stop it. And then my mom said, I'm going to leave you. And then my dad said, If you're going to leave me -- if you're going to leave me, I'm going to crash the car and we're all going to die.

He and his two younger sisters were all in the car when this incident happened. The son also described the impact his mother's death has had on the family.

The jury assessed appellant's punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division, and the trial court signed a judgment accordingly. Appellant timely appealed.

## Admission of the Offense Report

In his first issue, appellant contends the trial court erroneously overruled his hearsay objection to Exhibit 177, the offense report from the Orange County, California Sheriff's Department describing an assault committed against appellant's wife—the decedent—that occurred in December 2002. Appellant does not challenge Exhibit 176. In response, the State argues that appellant did not preserve error, that the trial court's ruling was not error, and that any error is harmless.

## A. Appellant preserved error.

Generally, to preserve error based on the erroneous admission of evidence, a party must make a timely objection and obtain a ruling from the trial court or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *see Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Appellant timely objected to Exhibit 177 on hearsay grounds and obtained a ruling.

The State contends that the objection was insufficient to preserve error because the exhibit contains both inadmissible and admissible portions, and appellant did not specify the portion of the exhibit constituting inadmissible hearsay. When evidence is admitted, a part of which is admissible and a part of which is not, it is incumbent on the party objecting to the admissibility of the evidence to specifically point out what part is inadmissible to preserve the alleged error. *E.g., Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Wilkinson v. State*, 523 S.W.3d 818, 826-27 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). But if an otherwise objectionable exhibit does not contain admissible portions, this rule does not apply.

Police offense reports such as Exhibit 177 are inadmissible hearsay in criminal cases. *See* Tex. R. Evid. 803(8); *Cole v. State*, 839 S.W.2d 798, 806 (Tex. Crim. App. 1990), *clarified on reh'g*, 839 S.W.2d 806, 811 (Tex. Crim. App. 1992); *Melchior v. State*, No. 14-14-00454-CR, 2015 WL 6692246, at *3 n.4 (Tex. App.—Houston [14th Dist.] Nov. 3, 2015, pet. ref'd) (mem. op., not designated for publication); *Baker v. State*, 177 S.W.3d 113, 122 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Exhibit 177 is therefore inadmissible hearsay in its entirety, and the State did not identify in this court or in the trial court any portion of Exhibit 177 that it contends is admissible. Appellant complains on appeal that the offense report is hearsay, and he asserted that objection at trial. Thus, his appellate complaint is

5

preserved. *See Sigalavillavicencio v. State*, No. 02-17-00244-CR, 2019 WL 311515, at *4 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication) (holding hearsay objection to part of police report preserved error initially, though appellant later waived error by not objecting each time the evidence was discussed).

## B. The trial court erred in admitting Exhibit 177 over appellant's hearsay objection.

We generally review a trial court's decision to admit evidence under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Neale v. State*, 525 S.W.3d 800, 809 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A trial court abuses its discretion only when its decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, it has not abused its discretion, and we defer to that decision. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will uphold the court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

The State acknowledges that police offense reports such as Exhibit 177 generally are inadmissible under Texas Rule of Evidence 803(8)(B) and do not qualify as business records under rule 803(6). *See Cole*, 839 S.W.2d at 811. The State asserts, however, that these exclusionary rules apply only in the guilt/innocence phase of a non-capital criminal trial, not during the punishment phase. According to the State, hearsay evidence ordinarily inadmissible during the guilt/innocence phase is admissible in the punishment phase so long as it is "relevant

to sentencing" under Texas Code of Criminal Procedure article 37.07, section 3(a), which "governs the admissibility of evidence during the punishment phase of a non-capital trial." *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004); Tex. Code Crim. Proc. art. 37.07, § (3)(a). Article 37.07, section 3(a) provides in relevant part:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.
>
> (a)(1) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. . . .

Tex. Code Crim. Proc. art. 37.07, § (3)(a)(1).

"[W]hen determining the admissibility of evidence under article 37.07, a court must be guided by the language of its provisions." *Haley v. State*, 173 S.W.3d 510, 514 (Tex. Crim. App. 2005). The State argues that under a prior version of the statute, a trial court could admit evidence it deemed relevant to punishment only so long as it was admissible under the rules of evidence. *See Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992). *Grunsfeld* held that evidence of unadjudicated extraneous offenses was inadmissible under article 37.07, section 3(a)'s then-current definition of "prior criminal record." *Id*. at 526. In 1993, the legislature amended article 37.07, section 3(a) and deleted the definition of "prior criminal record" and the phrase "as permitted by the Rules of Evidence." *See* Act

of May 26, 1993, 73rd Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3759. According to the State, when article 37.07, section 3(a) was amended, the legislature intended to allow a jury to consider otherwise inadmissible hearsay during the punishment phase of a non-capital trial so long as the evidence is relevant to sentencing and is of a type specifically described, such as a "prior criminal record" or an "extraneous crime or bad act." Indeed, as the State observes, section 3(a)(1) in its current form does not, by its express terms, exclude hearsay. *See* Tex. Code Crim. Proc. art. 37.07, § (3)(a)(1).

The Court of Criminal Appeals has, however, considered article 37.07, section 3(a)(1) on at least two occasions since the 1993 amendments and in both instances indicated, impliedly if not expressly, that a trial court is not free to disregard the rules of evidence completely at the punishment phase of a non-capital case tried to a jury. *See Ellison v. State*, 201 S.W.3d 714, 721-22 (Tex. Crim. App. 2006); *see also Smith v. State*, 227 S.W.3d 753, 759-60 (Tex. Crim. App. 2007).[2] In *Ellison*, the court addressed whether a probation officer was properly allowed to testify during sentencing whether the defendant was a suitable candidate for community supervision and whether such testimony was "relevant to sentencing." *Ellison*, 201 S.W.3d at 717. The court acknowledged that by "amending Article 37.07, Section 3(a) to include evidence of 'any matter the court deems relevant to sentencing,' the Legislature thereby allowed a jury to consider a wide range of evidence in determining whether to recommend probation." *Id*. at 718. Even so, the court later emphasized that, although the State may "offer," broadly, any matter relevant to

---

[2] In *Smith*, the court stated that the rules of evidence do not control what may be included in a pre-sentence investigation report and, by implication, what a trial court may consider in such a report at sentencing. *Smith*, 227 S.W.3d at 762 (citing *Fryer v. State*, 68 S.W.3d 628 (Tex. Crim. App. 2002)). But the objectionable evidence here was not contained in a pre-sentence investigation report and punishment was decided by a jury.

sentencing, "nothing in the statute requires that the evidence be admitted if it is excludable under some other statute or rule." *Id*. at 721. A trial judge "may evaluate many pieces of evidence, but the judge need not admit every piece." *Id*. "This is particularly important in jury sentencing," and, the court continued, "[a] jury must get all its information from properly admitted evidence at the punishment phase." *Id*.

Moreover, when the court discussed in *Smith* the relationship between article 37.07, section 3(a) and section 3(d)—pertaining specifically to consideration of pre-sentence investigation reports by the court during punishment—the court stated: "The Legislature could have believed that, were the question to come squarely before us, we would likely construe Section 3(d) to allow the trial court to consider unadjudicated extraneous misconduct if it is contained in a PSI, *even though [the court] could not consider it if only offered into evidence at a formal punishment hearing under Section 3(a)*." *Smith*, 227 S.W.3d at 763 (emphasis added).

Since *Ellison* and *Smith*, several intermediate appellate courts, including ours, have addressed the propriety of admitting hearsay or other generally inadmissible evidence during the punishment phase of a non-capital jury trial by reference to the rules of evidence. *E.g.*, *Castor v. State*, Nos. 01-18-00148-CR & 01-18-00149-CR, 2018 WL 6205891, at *4-6 (Tex. App.—Houston [1st Dist.] Nov. 29, 2018, no pet.) (mem. op., not designated for publication) (applying evidence rules and holding hearsay evidence erroneously admitted during punishment phase); *Patterson v. State*, 508 S.W.3d 432, 436-37 (Tex. App.—Fort Worth 2015, no pet.) (quoting *Ellison* and stating that court must determine whether relevant evidence offered under article 37.07, section 3(a) is admissible); *Hernandez v. State*, No. 08-13-00277-CR, 2015 WL 5260887, at *5 (Tex. App.—El Paso Sept. 9, 2015, no pet.) (mem. op., not designated for publication) (citing *Ellison* and stating trial court must

operate within bounds of evidence rules during punishment); *Santos v. State*, No. 13-13-00110-CR, 2013 WL 6175183, at \*1 (Tex. App.—Corpus Christi Nov. 21, 2013, no. pet.) (mem. op., not designated for publication) (holding hearsay evidence of defendant's criminal history erroneously admitted at punishment); *Dixon v. State*, 244 S.W.3d 472, 481-85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (addressing admission of hearsay during punishment phase); *see also Panchol v. State*, No. 02-12-00228-CR, 2013 WL 3874763, at \*6 (Tex. App.—Fort Worth July 25, 2013, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not err in admitting reputation evidence over defendant's hearsay objection during punishment phase because such evidence is expressly admissible under a hearsay exception and under article 37.07, section 3(a)); *Spikes v. State,* No. 09-00-00320-CR, 2002 WL 1478540, at \*2 (Tex. App.—Beaumont July 10, 2002, no pet.) (not designated for publication) (holding trial court did not err in overruling hearsay objection to police officer testimony during punishment phase because it came within the reputation concerning character exception of hearsay rule). Not one of these courts held that hearsay evidence was admissible during punishment under article 37.07, section 3(a)(1) absent satisfaction of a hearsay exception, and the State does not cite any case supporting its reading of the statute.

One court held that a trial court did not abuse its discretion by admitting extraneous crimes or bad acts evidence over a hearsay objection during the punishment phase of a non-capital trial when that evidence came within one of the categories specifically identified in article 37.07, section 3(a)(1). *Montoya v. State*, No. 08-17-00196-CR, 2019 WL 5288369, at \*7 (Tex. App.—El Paso Oct. 18, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that trial court did not err in overruling "general objection to hearsay contained within voluminous jail records offered into evidence during the punishment phase of trial"). But in

*Montoya*, notably, the appellant did not contend that the hundreds of pages of jail records admitted during the punishment phase were not relevant to sentencing; he merely objected, generally, that the records contained hearsay. *Id*. at *7. Further, the appellant did not specifically identify the hearsay he believed prejudiced him, nor did he argue that a factfinder could not have found beyond a reasonable doubt that the extraneous crimes or bad acts were committed by him based on the admissible evidence contained in the jail records. *See id*.

Considering all of the above authority, we conclude that if a police offense report (not included as part of a pre-sentence investigation) is offered into evidence during a jury punishment trial and the opponent objects on hearsay grounds, the proponent must establish the report's admissibility through a sponsoring witness or applicable hearsay exception. The court will evaluate whether the report, having been proven, is "relevant to sentencing." Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). Because appellant timely asserted a hearsay objection to Exhibit 177, and because the State did not establish its admissibility through a witness or by an applicable hearsay exception, the trial court erred in admitting the exhibit.

Although Exhibit 177's admission was error, we note that the State may have invited the error because, when it offered Exhibits 176 and 177, it described them to the trial court as "certified copies of judgments," when at least Exhibit 177 is not properly characterized as such.[3] The objection was not to the exhibit's authenticity, moreover, and had the State or appellant's counsel clarified the nature of the exhibit to the court and addressed potentially applicable hearsay exceptions, perhaps the ruling may have been different.

---

[3] The prosecutor later correctly described the exhibit as a "report" when it was published to the jury.

11

## C.     Admission of the offense report was harmful.

Having found error in the admission of the offense report in Exhibit 177, we must decide whether that error affected appellant's substantial rights to a fair sentencing trial.  The erroneous admission of hearsay evidence is non-constitutional error that is harmless unless the error affected the appellant's substantial rights.  *See* Tex. R. App. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373; *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010), *cert. denied*, 564 U.S. 1020 (2011).  A substantial right is affected when the improperly admitted evidence had a "substantial and injurious effect or influence" on the jury's verdict.  *Gonzalez*, 544 S.W.3d at 373.  If we have a fair assurance from an examination of the entire record that the error did not influence the jury, or had but a slight effect, we will not overturn the verdict.  *Id.*; *Shaw v. State*, 329 S.W.3d 645, 653 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

It is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on either the appellant or the State.  *Coble*, 330 S.W.3d at 279.  When assessing the effect of non-constitutional error due to improperly admitted evidence during punishment, as here, our task is to determine whether we have fair assurance from an examination of the entire record that the error did not influence the jury or had but a slight effect on the sentence.  *See Gonzalez*, 544 S.W.3d at 373; *Crain v. State*, 373 S.W.3d 811, 816 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Rowell v. State*, No. 03-08-00451-CR, 2009 WL 1364351, at *5, (Tex. App.—Austin May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (explaining that appellate courts "assess the injurious influence of evidence at the punishment phase by asking whether the defendant received a longer sentence as a result of the erroneously admitted evidence").  In

performing this review, we consider everything in the record, including all evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, and whether the State emphasized the error. *See Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

Overwhelming evidence showed that appellant killed the decedent by placing a gun against her head and pulling the trigger. Appellant lied about the incident more than once, first claiming the decedent was the victim of a random shooting and then claiming she committed suicide. The jury heard evidence that appellant previously threatened to shoot the decedent in front of their son. In fact, evidence showed that appellant threatened to kill the entire family if the decedent left him. Appellant's and the decedent's son testified as to appellant's vicious nature, stating that appellant had horsewhipped him and frequently hit the decedent. Finally, the jury heard ample evidence concerning the void left in the lives of the decedent's family.

The State referred to Exhibit 177 to establish that the decedent was the victim of the assault offense described in Exhibit 176—the admission of which appellant does not challenge on appeal. However, Exhibit 176 does not contain the factual detail appearing in Exhibit 177. During closing argument the State briefly referred to the facts described only in Exhibit 177:

> You can ask for the evidence to come back and you can read this. You can read these judgments. You can learn about the defendant biting [the decedent]. Where does a person go in their mind to bite somebody? We teach children don't bite people. You should be worried about being bit by a dog, not by your husband. How vicious does somebody have to be to bite? How angry. You can look at this, and you should if you want to.

Later, during its deliberations, the jury asked to review Exhibits 176 and 177, and the court allowed it. According to our record, these exhibits were the only evidence the jury requested to see during its punishment deliberations.

The range of punishment for the charged offense was five years to ninety-nine years or life. *See* Tex. Penal Code §§ 12.32, 19.02(c). Appellant's sentence of imprisonment for life was the maximum. To be sure, the jury may have considered such a harsh sentence amply justified given that it convicted appellant for murdering his wife by shooting her in the head at point-blank range, but we cannot say with fair assurance that the 2002 offense report in Exhibit 177 did not influence the jury or influenced the sentence only slightly, given that the State emphasized it in closing and the jury asked to see it before returning a verdict for the maximum sentence. Therefore, the error in admitting Exhibit 177 was harmful. *See Castor*, 2018 WL 6205891, at *8 (admission of hearsay at punishment phase held harmful); *Chapman v. State*, 150 S.W.3d 809, 819 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (sentence was near maximum, and jury notes during deliberations indicated jury may have considered improper evidence in assessing sentence).

We sustain appellant's first issue.

## Conclusion

We reverse the sentence and remand for a new trial on punishment.

/s/     Kevin Jewell
        Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

Publish — Tex. R. App. P. 47.2(b).

14